Scott E. Davis
State Bar No. 016160
SCOTT E. DAVIS, P.C.
8360 E. Raintree Drive, Suite 140
Scottsdale, AZ 85260

Telephone: (602) 482-4300
Facsimile:  (602) 569-9720
email: davis@scottdavispc.com

*Attorney for Plaintiff Pamela Lawson*

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Pamela Lawson, | Case No. |
| Plaintiff, | **COMPLAINT** |
| v. | |
| Liberty Life Assurance Company of Boston; Wells Fargo & Company; Wells Fargo & Company Disability Plan, | |
| Defendants. | |

Now comes the Plaintiff Pamela Lawson (hereinafter referred to as "Plaintiff"), by and through her attorney, Scott E. Davis, and complaining against the Defendants, she states:

### *Jurisdiction*

1.  Jurisdiction of the court is based upon the Employee Retirement Income Security Act of 1974 (ERISA); and in particular, 29 U.S.C. §§1132(e)(1) and 1132(f). Those provisions give the district courts jurisdiction to hear civil actions brought to recover

employee benefits.  In addition, this action may be brought before this Court pursuant to 28 U.S.C. §1331, which gives the Court jurisdiction over actions that arise under the laws of the United States.

*Parties*

2. At all times relevant to this action, Plaintiff was a resident of Maricopa County, Arizona.

3. Upon information and belief, Defendant Wells Fargo & Company (hereinafter referred to as the "Company") sponsored, administered and purchased a group long-term disability insurance policy which was fully insured by Liberty Life Assurance Company of Boston (hereinafter referred to as "Liberty Mutual").  The specific Liberty Mutual group long-term disability policy is known as Group Policy No.: GF3-850-289424-01 (hereinafter referred to as the "Policy").  The Company's purpose in sponsoring, administering and purchasing the Policy was to provide long-term disability insurance for its employees.

4. Upon information and belief, the Policy may have been included in and be part of an employee benefit plan, specifically named the Wells Fargo & Company Disability Plan (hereinafter referred to as the "Plan") which may have been created to provide the Company's employees with welfare benefits.  At all times relevant hereto, the Plan constituted an "employee welfare benefit plan" as defined by 29 U.S.C. §1002(1).

5. Upon information and belief, Liberty Mutual functioned as the claim administrator of the Policy.  However, pursuant to the relevant ERISA regulation, the Company and/or the Plan may not have made a proper delegation or properly vested fiduciary authority or power for claim administration in Liberty Mutual.

6. Liberty Mutual operated under a financial conflict of interest in administering and evaluating Plaintiff's long-term disability claim. Liberty operated in dual roles as the decision maker with regard to whether Plaintiff was disabled, as well as the payor of benefits.

7. Liberty Mutual's conflict of interest existed in that if it found Plaintiff was disabled, it was then financially liable for the payment of her disability benefits.

8. The Company, Liberty Mutual and the Plan conduct business within Maricopa County and all events giving rise to this Complaint occurred within Arizona.

*Venue*

9. Venue is proper in this district pursuant to 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391.

*Nature of the Complaint*

10. Incident to her employment, Plaintiff was a covered employee pursuant to the Plan and the relevant Policy and a "participant" as defined by 29 U.S.C. §1002(7). Plaintiff seeks disability income benefits in the form of "Own Occupation" benefits from the Plan and the relevant Policy pursuant to §502(a)(1)(B) of ERISA, 29 U.S.C. §1132(a)(1)(B), as well as any other non-disability employee benefits she may be entitled to from the Plan, any other Company Plan, and/or the Company as a result of being found disabled in this action.

11. Plaintiff also seeks a determination that she is disabled and meets the "Any Occupation" definition of disability set forth in the Plan and/or Policy as all of the evidence she submitted to Liberty Mutual supports a determination by the Court that she meets the Plan and/or Policy's "Any Occupation" definition of disability such that she is also entitled to those benefits. Plaintiff alleges the issue of whether she also meets the "Any

1  Occupation" definition of disability in the Plan and/or Policy may become ripe before the
2  Court since the "Own Occupation" definition of disability timeframe in the Plan and/or
3  Policy may expire while this matter is pending before the Court.

4  12. After working for the Company as a loyal employee, Plaintiff became
5  disabled on or about July 16, 2015, due to serious medical conditions and was unable to
6  work in her designated occupation as a First Line Supervisor of Office and Administrative
7  Support. Plaintiff has remained continuously disabled as that term is defined in the relevant
8  Policy for both "Own Occupation" and "Any Occupation" benefits since the day she
9  became disabled and has not returned to work in any occupation as a result of her serious
10 medical conditions.

11 13. Following the onset of her disability, Plaintiff filed a claim for short-term
12 disability benefits which was administered and approved by Liberty Mutual. Plaintiff's
13 short-term disability benefits have been paid by Liberty and those benefits have been
14 exhausted. Plaintiff alleges the fact that her short-term disability claim was approved by
15 Liberty Mutual using a similar definition of disability as is contained in the long-term
16 disability Policy, is relevant evidence for this Court to consider with regard to the
17 reasonableness of Liberty Mutual's denial of her long-term disability claim and is also
18 evidence that its denial of her long-term disability claim was influenced by its conflict of
19 interest and its desire to save money.

20 14. Following the exhaustion of her short-term disability benefits, Plaintiff then
21 filed a claim for long-term disability benefits under the relevant Policy which was
22 administered by Liberty Mutual. Liberty Mutual made every decision in Plaintiff's long-
23 term disability claim, which was to deny it.

1   15.   Upon information and belief, the relevant Liberty Mutual Policy and
2   definition of disability governing Plaintiff's long term disability claim is as follows:

> "Disability" or "Disabled" means:
> i.   that during the Elimination Period and the next 24 months of Disability the Covered Person, as a result of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation; and
> ii.  thereafter, the Covered Person is unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Occupation.

16.   In support of her claim for long-term disability benefits, Plaintiff submitted to Liberty Mutual medical evidence which supported her allegation that she met any definition of disability set forth in the relevant Policy.

17.   Plaintiff submitted to Liberty Mutual one of its own medical questionnaires dated August 12, 2015 completed by her treating physician who confirmed Plaintiff is not capable of performing physical activities on either a full-time or part-time basis.

18.   Plaintiff also submitted to Liberty Mutual a November 12, 2015 medical record from her treating physician who opined, "It appears that the patient is still not ready to return back to work."

19.   As part of its review of Plaintiff's claim for long-term disability benefits, Liberty Mutual obtained a medical records only "paper review" of Plaintiff's claim from a physician named Philippe Chemaly, D.O.

20.   Upon information and belief, Plaintiff alleges Dr. Chemaly is a long time medical consultant for Liberty Mutual and/or the disability insurance industry. As a result, Plaintiff alleges Dr. Chemaly may have an incentive to protect his own consulting relationships with Liberty Mutual and/or the disability insurance industry by providing

medical records only "paper reviews," which selectively review or ignore evidence such as occurred in Plaintiff's claim, in order to provide opinions and report(s) which are favorable to disability insurance companies and that are relied upon to deny disability claims.

21. In a letter dated February 26, 2016, Liberty Mutual informed Plaintiff it was denying her claim for long-term disability benefits.

22. Pursuant to 29 U.S.C. §1133, Plaintiff timely appealed Liberty Mutual's February 26, 2016 denial of her claim and submitted additional medical evidence supporting her appeal and her allegation that she is disabled and meets any definition of disability set forth in the Policy.

23. In a letter dated April 15, 2016, Liberty Mutual notified Plaintiff it had denied her claim for long-term disability benefits pursuant to the Policy. In the letter, Liberty Mutual also notified Plaintiff she had exhausted her administrative levels of review and could file a civil action lawsuit in federal court pursuant to ERISA.

24. Upon information and belief, Liberty Mutual's April 15, 2016 denial letter confirms that it failed to provide a full and fair review and in the process committed several ERISA procedural violations. Liberty Mutual violated ERISA for numerous reasons including completely failing to credit, reference, consider, and/or selectively reviewing and de-emphasizing most, if not all of Plaintiff's reliable evidence which proved that she met any definition of disability set forth in the Policy.

25. In evaluating Plaintiff's claim on appeal, Liberty Mutual owed her a fiduciary duty and it had an obligation pursuant to ERISA to administer it "solely in [her] best interests and other participants" which it failed to do.[1]

---

[1] It sets forth a special standard of care upon a plan administrator, namely, that the administrator "discharge [its] duties" in respect to discretionary claims processing "solely in the interests of the participants and beneficiaries" of the plan, § 1104(a)(1); it

-6-

26. Liberty Mutual failed to adequately investigate and failed to engage Plaintiff in a dialogue during the appeal of her claim with regard to what evidence was necessary so she could perfect her appeal and claim. Liberty Mutual's failure to investigate the claim and to engage in this dialogue and to ask for and/or obtain the evidence it believed was necessary and critical to perfect Plaintiff's claim is an ERISA procedural violation, it also violates Ninth Circuit case law and is a reason she did not receive a full and fair review.

27. Plaintiff alleges Liberty Mutual provided an unlawful review which was neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, by failing to have Plaintiff's claim reviewed by a truly independent medical professional; by failing to credit Plaintiff's reliable evidence; by failing to obtain an Independent Medical Examination when the policy allowed for one which raises legitimate questions about the thoroughness and accuracy of its review and the denial of her claim; by providing a biased and one sided review of Plaintiff's claim that failed to consider all the evidence submitted by her and/or by de-emphasizing medical evidence which supported Plaintiff's claim; by disregarding Plaintiff's subjective and self-reported complaints/symptoms; by failing to consider all the diagnoses and/or limitations set forth in her medical evidence as well as the impact the combination of those diagnoses and impairments would have on her ability to work; by failing to engage Plaintiff in a dialogue so she could submit the necessary evidence to perfect her claim and by failing to consider the impact the side effects that Plaintiff's medications would have on her ability to engage in any occupation.

---

simultaneously underscores the particular importance of accurate claims processing by insisting that administrators "provide a 'full and fair review' of claim denials," Firestone, 489 U.S., at 113, 109 S. Ct. 948, 103 L. Ed. 2d 80 (quoting § 1133(2)); and it supplements marketplace and regulatory controls with judicial review of individual claim denials, see § 1132(a)(1)(B). *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2350 (U.S. 2008).

28. Plaintiff alleges a reason Liberty Mutual provided an unlawful review which was neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, is due to its financial conflict of interest that manifested as a result of the dual roles Liberty Mutual undertook as the decision maker and the payor of benefits.  Liberty Mutual's conflict of interest provided it with a financial incentive to deny Plaintiff's claim and when it did, it saved itself money.

29. Plaintiff is entitled to discovery regarding Liberty Mutual's aforementioned conflicts of interest.  Plaintiff is also entitled to discovery regarding the conflicts of interest of any third party vendor hired by Liberty Mutual to retain a reviewing medical professional in Plaintiff's claim and of *any* individual who reviewed her claim.

30. Plaintiff alleges the Court may properly weigh and consider extrinsic evidence regarding the nature, extent and effect of *any* conflict of interest and/or any ERISA procedural violation which may have impacted or influenced Liberty Mutual's decision to deny her claim.

31. With regard to whether Plaintiff meets any definition of disability set forth in the Policy, the Court should review the evidence in Plaintiff's claim *de novo*, because even if the Court concludes the policy confers discretion, the unlawful violations of ERISA committed by Liberty Mutual as referenced herein are so flagrant they justify *de novo* review.

32. As a direct result of Liberty Mutual's decision to deny Plaintiff's disability claim, she has been injured and suffered damages in the form of lost long-term disability benefits, in addition to other potential non-disability employee benefits she may be entitled to receive through or from the Plan, from any other Company Plan and/or the Company as a result of being found disabled.  Plaintiff believes that other potential non-disability

1  employee benefits may include but not be limited to, health and other insurance related
2  coverage or benefits, retirement benefits and/or a pension, life insurance coverage and/or the
3  waiver of the premium on a life insurance policy providing coverage for her and her
4  family/dependents.  At the time of filing this Complaint, Plaintiff is not in a position to
5  know whether she is entitled to any other non-disability employee benefits in the event she
6  is found disabled in this action.

7  33.    Pursuant to 29 U.S.C. §1132, in this action Plaintiff seeks and is entitled to
8  recover unpaid disability and non-disability employee benefits, prejudgment interest,
9  reasonable attorney's fees and costs from Defendants.

10  34.    Plaintiff is entitled to prejudgment interest at the legal rate pursuant to A.R.S.
11  §20-462, or at such other rate as is appropriate to compensate her for the losses she has
12  incurred as a result of Defendants' nonpayment of benefits.

13  WHEREFORE, Plaintiff prays for judgment as follows:

14  A.    For an Order finding that the evidence in Plaintiff's claim is sufficient to
15  prove she meets the "Own Occupation" definition of disability set forth in the relevant
16  Plan and/or Policy and that she is entitled to these benefits, and any other non-disability
17  employee benefits she may be entitled to as a result of that Order, from the date she was
18  first denied these benefits through the date of judgment with prejudgment interest
19  thereon;

20  B.    For an Order directing Defendants to continue paying Plaintiff the
21  aforementioned benefits until such a time as she meets the conditions for the termination of
22  benefits;

23  C.    Assuming the issue is ripe before the Court (i.e. the 24 month "Own
24  Occupation" definition of disability and timeframe set forth in the Plan and/or Policy has

1 expired), Plaintiff seeks an Order that she is disabled and meets the "Any Occupation" definition of disability set forth in the relevant Plan and/or Policy and that she is entitled to these benefits from the date she is first eligible for them through the date of the Order with pre-judgment interest thereon;

D. Assuming the issue is ripe before the Court and the Court issues an Order that Plaintiff meets the "Any Occupation" definition of disability in the Plan and/or Policy, Plaintiff seeks an Order that Defendants must continue to pay these benefits and any other non-disability employee benefits she may be entitled to as a result of that Order until such a time as she meets the conditions for the termination of these benefits;

E. Alternatively, if the Court determines that Plaintiff meets the "Own Occupation" definition of disability in the Plan and/or Policy for that entire timeframe, but the Court is unable to make an "Any Occupation" determination for any reason, then Plaintiff seeks an Order remanding her claim to the Plan Administrator for an administrative review where she can submit new and additional evidence so the Plan Administrator may determine whether she meets the "Any Occupation" definition of disability;

F. For attorney's fees and costs incurred as a result of prosecuting this suit pursuant to 29 U.S.C. §1132(g); and

G. For such other and further relief as the Court deems just and proper.

DATED this 28th day of September, 2016.

SCOTT E. DAVIS. P.C.

By:  */s/ Scott E. Davis*
     Scott E. Davis
     Attorney for Plaintiff